UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                             No. 94-5551

PAUL ANDREW HENSON,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CR-93-89)

Argued: May 10, 1996

Decided: September 16, 1996

Before WILKINSON, Chief Judge, and HALL and
ERVIN, Circuit Judges.

_____

Vacated and remanded for a new trial by unpublished opinion. Judge
Ervin wrote the opinion, in which Chief Judge Wilkinson and Judge
Hall joined.

_____

**COUNSEL**

**ARGUED:** Sam Garrison, Roanoke, Virginia, for Appellant. Joseph
William Hooge Mott, Assistant United States Attorney, Roanoke,
Virginia, for Appellee. **ON BRIEF:** Richard Lee Lawrence, Roanoke,
Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney,
Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Paul Andrew Henson challenges his conviction for possession of an unregistered firearm under 26 U.S.C. § 5861(d). He argues that the district court should have instructed the jury that the government was required to prove his knowledge that the weapon had a barrel length triggering a statutory duty to register. In Staples v. United States-- decided after Henson's trial--the Supreme Court held that a defendant must be proven to have known that a weapon had characteristics bringing it within the statutory definition of "firearm." 114 S. Ct. 1793 (1994). Accordingly, we vacate Henson's conviction for possession of an unregistered firearm, and remand for a new trial.

I.

The Pittsylvania County, Virginia, Sheriff's Office investigated Paul A. Henson as part of an alleged conspiracy involving gambling, manufacturing illegal whiskey, cultivating marijuana, and dealing in chemicals used to make amphetamine. On January 6, 1993, officers obtained a warrant to search Henson's home, and seized--among other items--an "Uzi" semiautomatic rifle. A jury later convicted Henson of conspiracy to distribute marijuana, possession of marijuana, and possession of an unregistered firearm. **1** Henson was sentenced to twelve months' imprisonment on the possession of marijuana offense, ninety-six months' on the conspiracy count, and ninety-six months' on the firearms violation, all running concurrently.

II.

The National Firearms Act, 26 U.S.C. §§ 5801-5872, makes it "unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d). The statute defines a "firearm" to

_____

**1** Henson was acquitted of three other counts: possession of cocaine, possession with intent to distribute marijuana, and possession of a firearm during a drug-trafficking crime. Henson was also tried separately and convicted on four counts related to an illegal distillery. On those counts, Henson received 60 months, to be served concurrently with the other sentences.

include "a rifle having a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3). Henson argues that the Supreme Court's decision in Staples v. United States entitles him to an instruction that the government must prove that he knew his Uzi rifle had characteristics bringing it within the statute's grasp.**2**

In Staples, the defendant was convicted of possessing an unregistered machine gun, defined under the National Firearms Act as "any weapon which shoots . . . or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). A search of the defendant's home uncovered an AR-15 assault weapon--the civilian, semi-automatic version of the military's M-16 automatic. 114 S. Ct. at 1795-96. On the defendant's weapon, a manufacturer's metal stop designed to inhibit conversion to automatic firing capability had been filed away, and the gun had been reassembled with various M-16 parts. Id. Federal Bureau of Alcohol, Tobacco and Firearms ("BATF") agents testified that upon testing, the AR-15 fired more than one shot with a single trigger pull. Id. The defendant testified, however, that the weapon had never fired automatically while in his possession, and that he did not know that the weapon was capable of firing automatically. Id.

The Court decided that § 5861(d) required proof that a defendant knew of the characteristics of his weapon that made it a "firearm" under the Act. The Court reasoned that, in the absence of an indication of Congressional intent, the common law favors mens rea as an element of the crime. Id. at 1797. The Court rejected the contention that, like "public welfare" or "regulatory" offenses concerning inherently dangerous items, the National Firearms Act imposes strict criminal liability. Id. at 1800. Guns do not fall in the same category, the Court explained, because of their long tradition of lawful ownership,

_____

**2** The district court instructed the jury:

> It is not necessary for the Government to prove that the defendant knew that the item described in the indictment was a firearm which the law required to be registered. What must be proven beyond a reasonable doubt is that the defendant knowingly possessed the item as charged, that such item was a firearm as defined herein and that it was not then registered to the defendant in the National Firearms Register and Transfer Record.

and thus gun owners cannot be said to be sufficiently on notice of the likelihood of strict regulation. Id. at 1801. The Act's severe penalties, the Court added, strengthen the conclusion that Congress did not intend to eliminate the mens rea requirement. Id. at 1802.

The Supreme Court remanded United States v. Starkes--a case involving the possession of an unregistered sawed-off shotgun--to this court for reconsideration in light of its decision in Staples. United States v. Starkes, 32 F.3d 100 (4th Cir. 1994). On remand, we interpreted Staples to have overruled circuit precedent holding that proof of a defendant's knowledge of a weapon's salient characteristics under § 5861(d) was not required for a conviction, and we returned the case to the district court for a new trial. Starkes, 32 F.3d at 101. Our decision in Starkes makes untenable the Government's contention that Staples should be limited to characteristics not easily observable--such as firing capacity--and that knowledge of obvious qualities--such as barrel length--should be presumed.

In the wake of Staples and Starkes, Henson was entitled to a jury instruction to the effect that the Government was required to put on evidence that he knew that his Uzi had a barrel length bringing it within the scope of the statute. Because the Staples decision changed the elements of the offense, we vacate Henson's conviction, and remand the case for a new trial.**3**See Starkes, 32 F.3d at 101 (remanding for new trial rather than entering judgment of acquittal).

VACATED AND REMANDED FOR A NEW TRIAL

_____

**3** We note in passing that, on appeal, Henson argued that the evidence was insufficient to convict him of possessing an unregistered "firearm" under 26 U.S.C. § 5861(d), because the government did not prove that his Uzi rifle was capable of being fired. At trial, a BATF agent testified that an "operation check" was performed on the weapon; however, the prosecution did not ask about the results of that test. Because the district court did not rule on the issue, we express no opinion on whether the Government was required to adduce evidence that the Uzi was operable or readily restorable.

4